UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
M.K.,

                              Petitioner,

        -against-                                       25-cv-9918 (LAK)

PAUL ARTETA, in his official capacity as Sheriff of Orange
County, New York, and Warden of the Orange County
Correctional Facility; LADEON FRANCIS, in his official
capacity as Acting Field Office Director of New York, U.S.
Immigration and Customs Enforcement; TODD M. LYONS,
in his official capacity as Acting Director of U.S.
Immigration and Customs Enforcement; KRISTI NOEM, in
her official capacity as Secretary of the U.S. Department of
Homeland Security; PAM BONDI, in her official capacity as
Attorney General of the U.S. Department of Justice,

                              Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

                             Lucas S. Marquez
                             Anna K. Jessurun
                             BROOKLYN DEFENDER SERVICES
                             *Attorneys for Petitioner*

                             Mostafa Khairy
                             Special Assistant U.S. Attorney
                             JAY CLAYTON
                             UNITED STATES ATTORNEY
                             *Attorneys for Respondents*

LEWIS A. KAPLAN, *District Judge.*

Petitioner M.K.[1] entered the United States illegally over four years ago. Immigration authorities apprehended him and placed him in expedited removal proceedings under Section 235(b)(1) of the Immigration and Nationality Act, as amended (the "INA").[2]  He was detained because Section 235(b)(1) mandated detention as M.K. was "arriving in the United States" and was "inadmissible" since he lacked valid documentation allowing him to enter.

Despite the apparent mandate of INA Section 235(b)(1), immigration authorities then purported to release M.K. under Section 236 of the INA,[3] which allows a noncitizen to be released on bond or conditional parole pending a decision on whether the noncitizen is to be removed from the country.  M.K. subsequently lived in the United States for over two years before U.S. Immigration and Customs Enforcement ("ICE") redetained him at a periodic check-in.  He now has spent the last sixteen months in ICE detention, which respondents claim is mandatory because, in their view, M.K. remains subject to Section 235(b)(1).  The question here thus is whether immigration authorities' decision to release M.K. and allow him to live in the United States for over two years affects the lawfulness of his redetention and subsequent lengthy imprisonment.

The Court concludes that M.K.'s redetention and continued imprisonment was and is unlawful.

---

[1] The Court granted M.K.'s request to proceed pseudonymously because his habeas petition and the attached exhibits contain sensitive and personal information about his mental and physical health and personal history.  Mem. Endorsement Pet'r's Motion Leave Proceed Under Pseudonym (Dkt 12).  M.K. provided the Court and respondents with his full name in a sealed filing.  Dec. 3, 2025 Pet'r's Letter (Dkt 8).

[2] Section 235(b)(1) is codified at 8 U.S.C. § 1225(b)(1).

[3] Section 236 is codified at 8 U.S.C. § 1226.

### Facts

*Petitioner's Immigration History*

        M.K. is a citizen of Uzbekistan.[4]  He lived there for much of his adult life with his family, supporting them as a taxi and truck driver.[5]  In 2018, Uzbek police arrested him on allegedly false accusations of marijuana possession.[6]  M.K. claims that the Uzbek police "repeatedly tortured" him, "beat him with their fists and batons and sexually assaulted him by inserting batons into his rectum."[7]  He ultimately was sentenced to about three years in prison.[8]  Upon his release from the Uzbek prison, M.K. attempted to resume working as a driver, but the company for which he worked allegedly began to blackmail him.[9]  Fearing further detention and torture, M.K. fled to the United States.[10]

        On December 19, 2021, at forty years of age, M.K. entered the United States.[11]  He

---

[4]     Return Habeas Pet., Ex. 1 (Dkt 14-1) at 1.

[5]     Pet. Writ Habeas Corpus, Ex. 1 (Dkt 1-1) at 2; *id.*, Ex. 2 (Dkt 1-2) at 2.

[6]     *Id.*, Ex. 1 (Dkt 1-1) at 2; *id.*, Ex. 2 (Dkt 1-2) at 5.

[7]     *Id.* (Dkt 1) ¶ 18.

[8]     *Id.*, Ex. 1 (Dkt 1-1) at 3; *id.*, Ex. 2 (Dkt 1-2) at 5.

[9]     *Id.*, Ex. 1 (Dkt 1-1) at 3.

[10]     *Id.*

[11]     Return Habeas Pet., Ex. 1 (Dkt 14-1) at 1.

4

crossed over the United States-Mexico border illegally and soon thereafter was apprehended and detained by U.S. Customs and Border Protection ("CBP").[12]  The U.S. Department of Homeland Security ("DHS") charged M.K. with being inadmissible under the INA and placed him in expedited removal proceedings.[13]  M.K. claimed asylum in the United States based on a fear of persecution or torture if he were returned to Uzbekistan.[14]  Nevertheless, on February 22, 2022, an asylum officer found M.K.'s claim was not credible and ordered him immediately removed under INA Section 235(b)(1).[15]  M.K. appealed the asylum officer's decision to an immigration judge, which temporarily stayed the removal order.[16] On June 28, 2022, an immigration judge reversed the earlier negative credible fear finding,[17] vacated the removal order, and returned M.K.'s case to DHS for further proceedings.[18]

*Release from Immigration Detention*

On March 3, 2022 – shortly after M.K. appealed the negative credible fear finding

---

[12]     *Id.* at 2.

[13]     *Id.*, Ex. 3 (Dkt 14-3).

[14]     *See id.*, Ex. 2 (Dkt 14-2).

[15]     *Id.*; *id.*, Ex. 3 (Dkt 14-3).

[16]     *Id.*, Ex. 2 (Dkt 14-2).

[17]     *Id.*, Ex. 5 (Dkt 14-5) at 1.

[18]     *Id.*

5

but well before the immigration judge vacated the removal order – DHS released M.K. from immigration detention on his own recognizance.[19] According to the order of release, DHS purported to do so "[i]n accordance with section 236 of the [INA]," but provided no reasons for its decision.[20]

Upon his release from immigration detention, M.K. moved to Brooklyn, New York.[21] Since then, he has been arrested twice: once for allegedly destroying or altering a vehicle identification number and driving without a license and once for allegedly possessing a weapon and a forged instrument.[22] But he never has been convicted of a crime in the United States, receiving only an infraction for driving without a license.[23]

*Current ICE Redetention*

On July 10, 2024, after living in the United States for over two years, M.K. attended

---

[19]    *Id.*, Ex. 4 (Dkt 14-4) at 1.

[20]    *Id.*

[21]    Pet. Writ Habeas Corpus (Dkt 1) ¶ 23.

[22]    Return Habeas Pet., Ex. 6 (Dkt 14-6) at 2-3.

    M.K. claims that the charges stemming from his arrest for possessing a weapon and a forged instrument "were fully dismissed." Pet. Writ Habeas Corpus (Dkt 1) ¶ 25. In contrast, DHS's records reflect that at least the charge for possessing a forged instrument "is still pending." Return Habeas Pet., Ex. 6 (Dkt 14-6) at 2. Because respondents do not claim that M.K.'s criminal record justified his redetention, the Court need not determine whether there remain open criminal cases against M.K.

[23]    Return Habeas Pet., Ex. 6 (Dkt 14-6) at 3; *see* Pet. Writ Habeas Corpus (Dkt 1) ¶ 25.

6

a check-in at ICE's New York field office.[24] Despite M.K.'s absence of convictions, ICE detained

him after finding records of his arrests.[25] The warrant authorizing M.K.'s arrest – like the order of

release DHS issued to M.K. in 2022 – invoked DHS's authority pursuant to Section 236 of the

INA.[26] As will be relevant below, the form of warrant used by the immigration officer who issued

the instrument opened with language to the effect that there was probable cause to believe that the

subject of the warrant was removable from the United States.[27] Beneath that preamble, the form

listed various possible reasons that, if applicable, would have specified the reason why the issuing

officer believed that the subject of the warrant was removable.[28] Each potential reason appeared

beside a check box, the checking of which would indicate the alleged basis for the probable cause

determination.[29] The warrant-issuing officer checked the box indicating that the basis for probable

cause in M.K.'s case was that "confirmation of the subject's identity and a records check of federal

databases . . . affirmatively indicate . . . that the subject . . . lacks immigration status."[30] The officer

did not check the box beside any alternative basis, notably including the reason that, if checked,

---

[24]     Return Habeas Pet., Ex. 6 (Dkt 14-6) at 2-3.

[25]     *Id.*

[26]     *Id.*, Ex. 7 (Dkt 14-7).

[27]     *Id.*

[28]     *Id.*

[29]     *Id.*

[30]     *Id.*

would have indicated that there was probable cause to believe that there were "ongoing removal proceedings against" the subject of the warrant.[31]   Indeed, there were no ongoing removal proceedings against M.K. at that time.[32]

Thus, since July 10, 2024, M.K. has been detained at Orange County Jail.[33]  And on July 16, 2024, DHS commenced removal proceedings against M.K. pursuant to a notice to appear form that describes M.K. as "an alien present in the United States who has not been admitted or paroled."[34]  The notice does not describe M.K. as "an arriving alien."[35]

While in the current immigration detention, M.K. has applied for asylum and sought release on bond.[36]  With respect to his request for release on bond, on February 10, 2025, M.K. sought a custody redetermination hearing before an immigration judge.[37]  The immigration judge summarily denied M.K.'s request three days later, finding that M.K.'s detention was mandatory by virtue of INA Section 235(b)(1) as held by the Attorney General in *Matter of M-S-*,[38] a 2019

---

[31]     *Id.*

[32]     *See* Pet. Writ Habeas Corpus (Dkt 1) ¶ 24 (describing how no notice to appear had been filed or served upon M.K.'s release in 2022).

[33]     Return Habeas Pet., Ex. 8 (Dkt 14-8) at 1.

[34]     *Id.* at 2.

[35]     *Id.*

[36]     Pet. Writ Habeas Corpus (Dkt 1) ¶¶ 30, 37.

[37]     Return Habeas Pet., Ex. 10 (Dkt 14-10) at 1.

[38]     27 I. & N. Dec. 509 (U.S. Att'y Gen. 2019).

precedent binding on the immigration judge.[39] And it is necessary to digress briefly to describe how the immigration judge was obliged to reach that conclusion.

More than twenty years ago, the Board of Immigration Appeals (the "BIA") had held in *In re X-K-* that not all noncitizens transferred from expedited to full removal proceedings after establishing a credible fear of persecution in the event of removal are subject to mandatory detention.[40] As the Attorney General subsequently recognized in *Matter of M-S-*, the BIA there held that "'arriving' aliens – such as those 'attempting to come into the United States at a port of entry,' . . . must be detained, but all other transferred aliens are eligible for bond."[41]

Nevertheless, despite many years in which noncitizens who established credible fear of persecution and hence were transferred from expedited to full removal proceedings were eligible for release pending the outcome of the full removal proceedings, the Attorney General in 2019 held that INA Section 235(b)(1) requires detention of *all* such noncitizens, including those who had established credible fear of persecution if removed and who had been living in the United States for years.[42]

With that background, it came as no surprise that the immigration judge in M.K.'s case summarily rejected M.K.'s request for release on bond or that the immigration judge's written

---

[39]   *Id.*, Ex. 9 (Dkt 14-9) at 1.

[40]   23 I. & N. Dec. 731 (B.I.A. 2005).

[41]   27 I. & N. Dec. at 509-10 (citing *In re X-K-*, 23 I. & N. Dec. at 736) (internal citation omitted).

[42]   *Matter of M-S-*, 27 I. & N. Dec. at 509.

opinion, issued a month later, stated:

> "Given that the Respondent was transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture, the Court finds that he is ineligible for release on bond and must remain detained until his removal proceedings conclude, unless he is granted parole by DHS."[43]

M.K. appealed the immigration judge's ruling to the BIA.[44]  The BIA dismissed M.K.'s appeal and affirmed "the Immigration Judge's holding that the respondent is ineligible for a bond under the reasoning and holding of *Matter of M-S- . . . .*"[45]  In sum, both the immigration judge and the BIA held M.K.'s detention to be mandatory and governed by INA Section 235(b)(1).[46]

After over sixteen months in immigration detention, M.K. filed this habeas corpus petition on November 26, 2025.[47]


*Prior Proceedings*

The Court, at the parties' joint request, set an extended briefing schedule in this case.[48]  Respondents answered on December 16, 2025, and M.K. replied on December 22, 2025.  Because the parties do not dispute any material facts, the Court resolves the petition on the existing

---

[43]     Return Habeas Pet., Ex. 10 (Dkt 14-10) at 3.

[44]     *Id.*, Ex. 11 (Dkt 14-11).

[45]     *Id.* at 3.

[46]     *Id.* at 4-5; *id.*, Ex. 10 (Dkt 14-10) at 3.

[47]     It is undisputed that Respondent Paul Arteta, the Warden of Orange County Correctional Facility, had immediate physical custody of M.K. when M.K. commenced this action.

[48]     Mem. Endorsement Dec. 3, 2025 Pet'r's Letter (Dkt 13).

record.[49]

*Petitioner's Claimed Grounds for Habeas Relief*

   M.K. contends that his detention violates the INA because Section 235(b)(1) does not apply to him.  After DHS released him under Section 236 and initiated new removal proceedings against him in 2024, he contends, he no longer was an "arriving" noncitizen and his detention therefore is governed only by Section 236.  He claims too that his detention under Section 235(b)(1) violates the Administrative Procedure Act (the "APA")[50] because it is "not in accordance with law," "in excess of statutory . . . authority," and "without observance of procedure required by law."

   Even if the Court finds that M.K. is subject to mandatory detention under Section 235(b)(1), M.K. argues in the alternative that his detention has become so prolonged that due process requires respondents to bear the burden of proving by clear and convincing evidence the need for his continued detention at a bond hearing.

   Finally, M.K. alleges that his continued detention violates Section 504 of the Rehabilitation Act of 1973[51] because DHS has failed to provide him, in light of his mental disabilities, an equal opportunity to obtain the same result, benefit, or level of achievement under the immigration laws as those without his disabilities would obtain.

   In addition, M.K. seeks release pending adjudication of this habeas petition under

---

[49]  *See* 28 U.S.C. § 2243; *id.* § 2248.

[50]  5 U.S.C. § 706.

[51]  Section 504 is codified at 29 U.S.C. § 794.

*Mapp v. Reno*[52] – *i.e.*, that there are extraordinary circumstances justifying his release, he has substantial claims, and his release is necessary to make the habeas remedy effective. M.K. seeks also an injunction restraining respondents from transferring him outside the jurisdiction of ICE's New York field office and this Court pending adjudication of this habeas petition.

*The Response*

Respondents contend that M.K. is detained lawfully pursuant to Section 235(b)(1)(B)(ii) because he is subject to expedited removal, and detention is mandatory during expedited removal. In respondents' view, the facts that (1) DHS released M.K. in 2022 pursuant to Section 236, (2) the immigration judge vacated the expedited renewal order in 2022, and (3) DHS commenced a new removal proceeding against M.K. in 2024 all are of no matter. In other words, according to respondents, once subject to expedited removal, always subject to expedited removal. Respondents conclude that M.K.'s due process rights were not – and are not – violated by his redention because he is entitled only to the process provided for in Section 235(b)(1), which does not include bond hearings.

Respondents dispute that M.K.'s detention violates Section 504 of the Rehabilitation Act because there is no evidence, they say, that M.K. was denied the opportunity to participate in or benefit from respondents' services, programs, or activities.

Finally, respondents assert in the alternative that if the Court "were to determine that Petitioner's detention is governed by [Section 236] . . . the proper remedy would not be release but

---

[52]    241 F.3d 221 (2d Cir. 2001).

rather a bond hearing before an immigration judge, who would consider whether Petitioner presents a danger to the community or a flight risk."[53]

### Discussion

Once again, this Court must adjudicate the legality of the administration mandating detention for a noncitizen who came into the United States illegally, but since has been living in the United States. And, once again, this Court is not the first federal district court to do so. Less than a month ago, in *Barco Mercado v. Francis*,[54] this Court held that it was unlawful for the administration to detain under Section 235(b)(2)(A)[55] – which governs noncitizens "seeking admission" – a noncitizen who already had been living in the United States. In that case, this Court agreed with what then were at least "160 different U.S. district judges sitting in about fifty different courts spread across the United States" in 350 different cases.[56]

Here, the Court notes that several district courts already have rejected respondents' argument that INA Section 235(b)(1)(B)(ii) requires the detention of a noncitizen who was released under Section 236 pending the outcome of removal proceedings and has been living in the United

---

[53] Resp'ts' Mem. Law Opp'n Pet. Writ Habeas Corpus (Dkt 15) at 20 n.8.

[54] No. 25-cv-6582 (LAK), 2025 WL 3295903 (S.D.N.Y. Nov. 26, 2025).

[55] 8 U.S.C. § 1225(b)(2)(A).

[56] *Barco Mercado*, 2025 WL 3295903, at *4.

States for a lengthy period.[57]  Nevertheless, as in *Barco Mercado*, the Court, in the absence of a governing Supreme Court or Second Circuit decision, makes its own independent assessment of whether Section 235(b)(1)(B)(ii) applies to M.K.

Though the statutory analysis ultimately is simple, the Court first describes the statutory scheme provided by Section 235(b)(1).  Understanding this scheme is necessary to see why the text of Section 235(b)(1)(B)(ii) does not now justify M.K.'s detention.  The Court next discusses respondents' treatment of M.K. throughout this case, which further demonstrates that Section 235(b)(1)(B)(ii) no longer applies to M.K.  The relevant statute is Section 236.  Once the Court determines the statute that applies to M.K.'s detention, it turns to the remaining issues, including the relief, if any, that should be granted to M.K.

*Section 235(b)(1) Statutory Scheme*

In relevant part, Section 235(b)(1) provides as follows:

"If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a

---

[57]  *Dos Santos v. Noem*, 25-cv-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Patel v. Tindall*, No. 25-cv-373, 2025 WL 2823607 (W.D. Ky. Oct. 3, 2025); *De Andrade v. Moniz*, No. 25-cv-12455, 2025 WL 2841844 (D. Mass. Oct. 7, 2025); *Fernandez Lopez v. Wofford*, No. 25-cv-1226, 2025 WL 2959319 (E.D. Cal. Oct. 17, 2025); *Barahona v. Hyde*, No. 25-cv-12551, 2025 WL 3197631 (D. Mass. Oct. 20, 2025); *Leiva Flores v. Albarran*, No. 25-cv-9302, 2025 WL 3228306 (N.D. Cal. Nov. 19, 2025); *Moran v. Joyce*, No. 25 Civ. 9645, 2025 WL 3632895 (S.D.N.Y. Dec. 15, 2025).

*But Romero v. Bondi*, No. 25-cv-993, 2025 WL 2490659 (E.D. Va. July 2, 2025).

fear of persecution."[58]

If the noncitizen indicates either an intention to apply for asylum or a fear of persecution, "the officer shall refer the alien for an interview by an asylum officer . . . ."[59]  If the officer then "determines at the time of the interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum."[60]  On the other hand, "if the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States . . . ."[61]  Such a negative credible fear finding is subject to "prompt review by an immigration judge," which must take place within seven "days after the date of the determination."[62]  A noncitizen going through this process – the determination of whether the noncitizen has a credible fear of persecution and, if not, expedited removal – "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."[63]  The only avenue for release of a noncitizen subject to expedited removal

---

[58]     8 U.S.C. § 1225(b)(1)(A)(i).

        8 U.S.C. § 1182(a)(6)(C) renders inadmissible noncitizens who seek to gain admission into the United States through misrepresentation.  8 U.S.C. § 1182(a)(7), meanwhile, renders inadmissible noncitizens who lack valid documentation at the time of application for admission.

[59]     *Id.* § 1225(b)(1)(A)(ii).

[60]     *Id.* § 1225(b)(1)(B)(ii).

[61]     *Id.* § 1225(b)(1)(B)(iii)(I).

[62]     *Id.* § 1225(b)(1)(B)(iii)(III).

[63]     *Id.* § 1225(b)(1)(B)(iii)(IV).

is if the DHS Secretary decides "in his discretion [to] parole [a noncitizen] into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . ."[64]

In other words, when a noncitizen "who is arriving in the United States" is deemed inadmissible due to misrepresentation or lack of documentation, the noncitizen shall be ordered removed. If the noncitizen successfully claims a fear of persecution in his home country, immediate removal is not ordered. But regardless of whether the noncitizen's claim ultimately is deemed credible, the noncitizen shall be detained while the claim is adjudicated. That is what Section 235(b)(1) requires. The only avenue for release is DHS's discretion to release the noncitizen based on humanitarian reasons or the public good.

*The Administrative Record in Petitioner's Case*

With the statutory scheme of Section 235(b)(1) in mind, respondents claim that this case is straightforward. M.K. was inadmissible when he arrived in the United States and accordingly was ordered removed. When M.K. subsequently claimed a fear of persecution and filed an application for asylum, he delayed his removal. Yet, in doing so, he mandated his detention. Because an immigration judge found M.K.'s fear credible and M.K.'s asylum application remains pending, M.K.'s detention continues to be mandated by Section 235(b)(1)(B)(ii).

These facts – as distinct from the legal conclusion in the final sentence of the previous paragraph – are undisputed and, were they the only facts in this case, respondents might

---

[64] *Id.* § 1182(d)(5)(A).

16

be correct. But those facts constitute just the start and end of the story. Respondents gloss over the middle. The Court may not do the same.

When M.K. claimed a fear of persecution, an asylum officer first found M.K's claim *not* credible. M.K. appealed that decision to an immigration judge. Under Section 235(b)(1)(B)(iii)(III), the immigration judge had to review that decision within seven days. Instead, the immigration judge took over four months. In the meantime, despite Section 235(b)(1)(B)(iii)(IV)'s ostensible mandate of detention, DHS released M.K. on his own recognizance and purported to do so under Section 236. M.K. then lived in the United States for over two years before he was redetained by ICE pursuant to a warrant that again claimed authority under Section 236 and failed to note ongoing expedited removal proceedings against M.K. DHS then *commenced* new removal proceedings against M.K. by issuing a notice to appear form that described M.K. not as an "arriving" noncitizen subject to expedited removal proceedings, but as a noncitizen present in the United States who had not been admitted or paroled.

Respondents elide all these facts. They assert that M.K. remained an "arriving alien" subject to Section 235(b)(1) whose "presence in the United States after the Immigration Judge vacated the expedited removal order . . . cannot shift the statutory authority for this detention from Section [235(b)(1)(B)(ii)] to Section [236]."[65] Yet they offer no support for that proposition, which is no more than an *ipse dixit*. In fact, however, DHS released M.K. under Section 236 and then redetained him under Section 236. Moreover, respondents ignore the fundamental difference between a noncitizen detained at or near the border and a noncitizen who has established a credible

---

[65]    Resp'ts' Mem. Law Opp'n Pet. Writ Habeas Corpus (Dkt 15) at 13.

fear of persecution, been released conditionally by our government, and lived in this country for a substantial period.

*Statutory Authority Governing Petitioner's Detention*

After living in the United States for over two years, M.K. cannot have been subject to Section 235(b)(1). The text of Section 235(b)(1) plainly indicates that it applies to noncitizens who are "arriving in the United States."[66] The word "arriving" means "'in the process of reaching' a destination."[67] In Section 235(b)(1), the word "arriving" thus "appear[s] to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival."[68] As of July 2024, M.K. "was no longer 'arriving in the United States'—he had been living here for [over] two years."[69] Therefore, as of July 2024, Section 235(b)(1) was inapplicable to M.K. That remains true today.

Respondents attempt to wave away this conclusion by invoking *DHS v.*

---

[66]    See 8 U.S.C. §§ 1225(b)(1)(A)(i)-(ii).

[67]    *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065, 2025 WL 3314420, at *20 (E.D.N.Y. Nov. 28, 2025) (quoting *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872, 2025 WL 2192986, at *28 (D.D.C. Aug. 1, 2025)).

[68]    *Rodriguez-Acurio*, 2025 WL 3314420, at *20 (quoting *Coal. for Humane Immigrant Rts.*, 2025 WL 2192986, at *27).

[69]    *Jimenez*, 2025 WL 2639390, at *6; *accord Rodriguez-Acurio*, 2025 WL 3314420, at *21.

*Thuraissigiam*,[70] *United States ex rel. Kordic v. Esperdy*,[71] and *Shaughnessy v. United States ex rel. Mezei*[72] to stand collectively for the proposition that a noncitizen who has not been admitted to the United States is "treated for constitutional purposes as if stopped at the border."[73]  This is known as the entry-fiction doctrine.  In *Barco Mercado*, this Court stated that the entry-fiction doctrine "may well be so as a constitutional matter.  But it does not change the fact that Section 235(b)(2)(A), as a statutory matter, mandates detention only for 'applicants for admission' who are actively 'seeking admission . . . into the United States.'"[74] The same logic holds here.  The entry-fiction doctrine cannot change the fact that Section 235(b)(1), as a statutory matter, mandates detention only for noncitizens who are "arriving in the United States."[75]

If DHS had released M.K. under Section 212(d)(5),[76] this might be a different case. Section 212(d)(5) states that the parole of a noncitizen for "urgent humanitarian reasons or

---

[70] 591 U.S. 103 (2020).

[71] 386 F.2d 232 (2d Cir. 1967).

[72] 345 U.S. 206 (1953).

[73] Resp'ts' Mem. Law Opp'n Pet. Writ Habeas Corpus (Dkt 15) at 14.

[74] 2025 WL 3295903, at *9.

[75] Section 235(b)(1) applies to also any noncitizen specially designated by the Attorney General and "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  8 U.S.C. § 1225(b)(1)(A)(iii).  This provision, however, is irrelevant in this case because respondents do not contend that M.K. falls within such a category of noncitizens designated by the Attorney General.

[76] Section 212(d)(5) is codified at 8 U.S.C. § 1182(d)(5)(A).

significant public benefit . . . shall not be regarded as an admission of the alien and when the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled." But it is undisputed that M.K. was not released "for urgent humanitarian reasons or significant public benefit." And Section 236 – the authority under which DHS purported to release M.K. – contains no analogous language. Unlike Section 212(d)(5), Section 236 statutorily does not authorize respondents to treat M.K., once he had been conditionally paroled, as if were in expedited removal after having been stopped at the border.[77]

In sum, the unambiguous text of Section 235(b)(1) resolves the question of whether Section 235(b)(1) remains applicable to M.K. after DHS released him and he had lived in the United States for over two years. It does not remain applicable. Because the text is unambiguous, the Court need not resort to other tools of statutory interpretation.[78] Nevertheless, this Court's opinion in *Barco Mercado* describes also how the statutory text of Section 236, the statutory history of Sections 235 and 236, and precedent show "that Section 236 governs detention pending removal of noncitizens like [M.K.,] who [was] living in the United States, especially having been released on [personal recognizance] . . . . If respondents were going to redetain [M.K.] lawfully, they would have had to have done so pursuant to Section 236 and its attendant regulations."[79] This conclusion is compelled by statutory text, structure, history, and precedent.

---

[77]     *See De Andrade*, 2025 WL 2841844, at *4-6 (describing the difference between "conditional parole" under Section 236 and "'humanitarian' or 'significant public benefit' parole" under Section 212(d)(5)); *Fernandez Lopez*, 2025 WL 2959319, at *4.

[78]     *See, e.g.*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 184 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

[79]     2025 WL 3295903, at *9, 11; *see Jimenez*, 2025 WL 2639390, at *6.

*Remedy*

As in *Barco Mercado*, the Court offers no opinion on whether it would have been right or wrong for respondents to redetain M.K. under Section 236 or, for that matter, any other immigration statute applicable to him. To offer such an opinion would be not only improvident, but unnecessary. That is because respondents advance no argument that M.K. is detained pursuant to any statute other than Section 235(b)(1)(B)(ii). Respondents do not attempt to justify M.K.'s detention under Section 236, suggesting only that if the Court finds that M.K.'s detention is governed by Section 236, it should order a bond hearing rather than M.K.'s immediate release.

Having determined that Section 235(b)(1) is inapplicable to M.K., the Court concludes that M.K.'s detention pursuant to the wrong statute is unlawful.[80] Where respondents have offered no reason for why M.K's detention under Section 236 or any other statute would be lawful, the proper remedy is immediate release, not ordering a bond hearing. Ordering a bond hearing would fail to remedy the statutory violation that has occurred here. Moreover – given the Attorney General's decision in *Matter of M-S-* and the BIA's decisions in this case and *Matter of*

---

[80] Because the Court concludes that M.K.'s statutory challenge has merit and warrants the requested relief, the Court need not, and does not, decide whether his APA claim, due process challenge to his prolonged detention, or argument under Section 504 of the Rehabilitation Act also would entitle him to the requested relief. And because the Court orders M.K.'s immediate release, his requests for release pending adjudication of this habeas petition and an injunction preventing his transfer are moot.

21

*Yajure Hurtado*[81] – run the serious risk of being futile.[82]


## Conclusion

For the foregoing reasons, M.K.'s petition for a writ of habeas corpus (Dkt 1) is granted. Respondents shall release M.K. immediately and file with the Clerk of Court, no later than 4 p.m. on December 24, 2025, an affidavit or declaration confirming that they have released M.K. as directed. The Clerk is directed to terminate the case upon receipt of such an affidavit or declaration. Pending a final determination in his removal proceedings, M.K. shall remain free of detention or any other restraint under the immigration laws of the United States – including Sections 235(b)(1) and 235(b)(2)(A) – to which he was not subject upon his release on personal recognizance on March 3, 2022.


SO ORDERED.

Dated:        December 23 , 2025
Issued at:    *10:15 pm*


Lewis A. Kaplan
United States District Judge

---

[81]
29 I. & N. Dec. 216, 216 (B.I.A. 2025).

[82]
See *Barco Mercado*, 2025 WL 3295903, at *12; *Cunas Hurtado v. Genalo*, No. 25-cv-9172 (LAK), 2025 WL 3458605, at *2 & *2 n.20 (S.D.N.Y. Dec. 2, 2025); *Shi v. Almodovar*, No. 25-cv-9905 (LAK), 2025 WL 35442144, at *2 & *2 n.18 (S.D.N.Y. Dec. 10, 2025).